UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IGOR BRIKMAN,

                    Plaintiff,

       -against-

WESTCHESTER MEDICAL CENTER
ADVANCED PHYSICIAN SERVICES, P.C.,
as well as ANGELICA PONIROS, MAT
GAWRONSKI, and GABBIE FRIED,
individually,

                    Defendants.

**OPINION & ORDER**

23-CV-10749 (PMH)

PHILIP M. HALPERN, United States District Judge:

Igor Brikman ("Plaintiff"), proceeding *pro se*, commenced this action on December 8, 2023 (Doc. 1) and filed the Second Amended Complaint on September 27, 2024 (Doc. 36, "SAC"), asserting claims against Westchester Medical Center Advanced Physician Services, P.C. ("WestMed"), Angelica Poniros ("Poniros"), Mat Gawronski ("Gawronski"), and Gabbie Fried ("Fried," together with Poniros and Gawronski, the "Individual Defendants" and collectively with West Med, "Defendants"). Plaintiff presses nineteen claims for relief under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Age Discrimination in Employment Act ("ADEA"); the Americans with Disabilities Act of 1990 ("ADA"),42 U.S.C. § 12101 *et seq.*; Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*; the New York State Human Rights Law ("NYSHRL"); the Fair Labor Standards Act ("FLSA"); and the New York Labor Law ("NYLL"). (SAC ¶¶ 275-473).

Pending before the Court is the Defendants' motion to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 45; Doc. 46, "Tann Decl."; Doc. 47, "Kukowski Decl."; Doc. 48, "Def. Br."). Plaintiff opposed Defendants' motion (Doc. 66,

"Brikman Decl."; Doc. 67, "Pl. Br."), and the motion was fully submitted with the filing of

Defendants' reply on June 20, 2025 (Doc. 74, "Reply").

For the reasons set forth below, Defendants' motion to dismiss is GRANTED IN PART

and DENIED IN PART.

## BACKGROUND

Plaintiff was hired as a vascular technologist by WestMed on July 10, 2017, continuing in

this position until his termination on December 8, 2021. (SAC ¶¶ 31, 262). Beginning in or about

January 2020, Gawronski served as Plaintiff's direct supervisor. Since in or about mid-2019, Fried

served as "Vice-President" during Plaintiff's tenure. Poniros served, at the outset of Plaintiff's

employment, as Clinical Manager within the Echocardiography Department. In or about the fall

of 2018, Poniros was promoted to management of the "vascular lab" as well. (*Id.* ¶¶ 35-37).

Beginning as far back as Spring 2018, Plaintiff alleges that Poniros discriminated against him

based on his age (Plaintiff alleges that he turned 40 in "July 2021"),[1] national origin (Plaintiff is

Ukrainian-born (*id.* ¶ 40)), and actual and perceived disabilities (Plaintiff alleges the following

"disabilities": cervical stenosis and associated radiculopathy, anxiety, sleep disorders, and

headaches (*id.* ¶ 3)). Plaintiff also alleges that Fried and Gawronski discriminated against him as

well upon their joining WestMed in or about 2019 and 2020, respectively. (*See, e.g.*, *id.* ¶¶ 163,

182-184, 186-189). For example, Plaintiff alleges that, in spring of 2018, he observed Poniros

---

[1] Given the liberality afforded *pro se* litigants, it is appropriate to consider new allegations in a *pro se* plaintiff's opposition to a motion to dismiss where they are consistent with the allegations contained in the pleading. *Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014) ("Where new allegations in a *pro se* plaintiff's opposition memoranda 'are consistent with the allegations contained' in the Complaint, they may be read 'as supplements to th[e] pleadings[.]'" (quoting *Boyer v. Channel 13, Inc.*, No. 04-CV-02137, 2005 WL 2249782, at *6 (S.D.N.Y. Mar. 9, 2005))). Accordingly, the Court considers on this motion the additional allegations in Plaintiff's opposition that are relevant to this motion and consistent with the SAC, including Plaintiff's allegation that "[i]t is undisputed that Plaintiff was born in July 1981 in Ukraine." (Pl. Br. at 10).

making discriminatory comments while he was conversing with a patient in his native language. Specifically, Poniros stated that there are "a lot of immigrants here [at WestMed], need to clean the place up." (*Id.* ¶ 40). That same year, Plaintiff allegedly heard Poniros make similarly discriminatory ageist comments, stating in front of Plaintiff and another employee, "Ty," over 50 years old at the time, "there is too much old trash working here." (*Id.* ¶ 53). Subsequently, Plaintiff witnessed other employees, both foreign-born and over the age of 40, being treated differently, *e.g.*, being forced into retirement, or generally being treated worse than younger U.S.-born employees. (*See, e.g.*, *id.* ¶¶ 55, 59, 67, 77, 80-81, 99-103, 125-126, 145, 166-167, 213, 216-222).

Plaintiff alleges that this type of behavior continued through and up to his termination on December 8, 2021. In addition, Plaintiff alleges retaliation by the Individual Defendants, especially once Plaintiff turned 40 in the summer of 2021. (*Id.* ¶ 151).

Plaintiff further alleges that he was retaliated against for utilizing FMLA leave in order to take care of his grandmother. When his leave request was initially denied, then subsequently granted with modifications on September 27, 2021, Poniros "stood mere inches from Plaintiff, invading his personal space with a threatening demeanor," which Plaintiff alleges was a "strategic act of retaliation." (*Id.* ¶¶ 152-162). Plaintiff alleges that Defendants categorized his termination as due to "time theft." However, Plaintiff alleges this was pretextual, concealing the "underlying motives" of termination due to Plaintiff's age, national origin, actual and perceived disabilities and retaliation for engagement in "protected activities," including reporting discrimination of other employees, requesting medical accommodations, and "utilizing FMLA rights." (*Id.* ¶ 267). Finally, Plaintiff claims that "upon information and belief," he was replaced by an individual in their mid-20s, who is U.S.-born and "without any documented or perceived disabilities." (*Id.* ¶ 269).

On June 6, 2022, subsequent to the above-described termination, Plaintiff alleges he submitted a "dual multi-page EEOC complaint via fax" to the EEOC that "contained the main allegations set forth in this Complaint," and then subsequently resubmitted the document "on June 8, 2022, ensuring receipt." (*Id.* ¶ 12). However, "after persistent follow-ups and due to conflicting information received" from EEOC personnel, Plaintiff alleges that he was directed to submit a "new complaint with only a few short sentences," which Plaintiff did on August 29, 2022. (*Id.* ¶¶ 13-14). Even though Plaintiff alleges that the EEOC personnel reassured him that the "EEOC investigator's intake interview would 'trump everything,'" the August 29, 2022 EEOC Complaint was ultimately utilized and submitted to Defendants. Separately, Plaintiff alleges that an intake interview was never conducted. (*Id.* ¶ 15; Pl. Br. at 8-9). Accordingly, Plaintiff amended his EEOC Complaint in or about April and May 2023, and received a "Notice of Right to Sue" from the EEOC on September 21, 2023. (SAC ¶¶ 15, 17; Pl. Br. at 9).

This litigation followed.

## STANDARD OF REVIEW

### I.    Federal Rule of Civil Procedure 12(b)(6)

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted

4

unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The presumption of truth, however, "is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 72. A plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cnty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal

conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## II.    Documents Considered on a Motion to Dismiss

On a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider . . . documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which plaintiff relied in bringing the suit."). Even if a document is not incorporated into the complaint by reference, the Court may consider it "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.2d 391, 398 (2d Cir. 2006)); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also Perry v. Mary Ann Liebert, Inc.*, No. 17-CV-05600, 2018 WL 2561029, at *4 (S.D.N.Y. June 4, 2018), *aff'd*, 765 F. App'x 470 (2d Cir. 2019). Further, where a document is of "disputed authenticity," the Court

may not consider it on a motion to dismiss. *See Azzolini v. Marriott Intern., Inc.*, 417 F. Supp. 2d 243, 246 (S.D.N.Y. 2005) (collecting cases).

Where a document is not attached to the complaint or integral thereto such that it can be considered on a motion to dismiss, or where a document's authenticity is disputed, a district court must either "exclude the additional material and decide the motion on the complaint alone" or "convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)); *see also* Fed. R. Civ. P. 12(d). All parties submitted extraneous documents for the Court's consideration.

Defendants submitted five extraneous documents: (i) Plaintiff's EEOC Charge of Discrimination dated August 29, 2022 (Tann Decl., Ex. 1, "August 29, 2022 EEOC Charge"); (ii) Plaintiff's Amended EEOC Charge of Discrimination dated April 10, 2023 (*id.*, Ex. 2, "Amended 2023 EEOC Charge"); (iii) an EEOC Memorandum (*id.*, Ex. 3, "EEOC Memo"); (iv) a Westchester Medical Center Health Network "Employee Handbook" (Kukowski Decl., Ex. A); and (v) a Westchester Medical Center "Vacation Time" Policy and Procedure document (*id.*, Ex. B).[2]

---

[2] Plaintiff requests that the Court "strike" certain documents attached as exhibits to the Tann Declaration (*see* Pl. Br. at 5-6), which Defendants oppose in their Reply (*see* Reply at 4 n.10, 11). That application is denied. The Court declines to "strike" any documents at this stage, as the real issue before the Court is whether any of the documents offered by either side—all of which are outside the four corners of the SAC—may be utilized to decide Defendants' motion to dismiss. However, any such "motion" is improperly before the Court as Plaintiff failed to file an associated notice of motion. *Keesh v. Quick*, No. 19-CV-08942, 2022 WL 2160127, at *7 (S.D.N.Y. June 15, 2022); *see also Corr. Officers Benevolent Ass'n of Rockland Cnty. v. Kralik*, No. 04-CV-02199, 2011 WL 1236135, at *1 n.2 (S.D.N.Y. Mar. 30, 2011). In any event, the Court considers the parties' respective arguments to determine which documents, if any, the Court will consider on this motion.

Separately, Plaintiff proffers the following documents introduced via his Declaration: (i) Plaintiff's previously filed Memorandum of Law in Opposition, dated May 9, 2025, which was stricken from the docket as improperly filed (Brikman Decl., Ex. A, "Plaintiff's Previously-Filed Brief"); (ii) a document that Plaintiff claims is a "supplemental submission to the EEOC in support of his amended charge" (*id.*, Ex. B, "Supplemental Submission"); (iii) a Notice of Right to Sue directed to Plaintiff from the EEOC (*id.*, Ex. C, "Right to Sue"); (iv) Plaintiff's faxed EEOC Charge of Discrimination dated June 6, 2022 (*id.*, Ex. D, "June 6, 2022 EEOC Charge"); and (v) a "timeline" prepared by Plaintiff allegedly "documenting key communications with the EEOC" (*id.*, Ex. E, "EEOC Timeline").

The Court declines to consider most of the documents noted above as improper on a motion of this ilk; and finds it inappropriate to convert to a motion for summary judgment especially in light of the breadth of the allegations alone, spanning almost 500 paragraphs. The Court declines to consider Plaintiff's Previously-Filed Brief as it was stricken from the record by Order dated May 15, 2025. (*See* Doc. 62).[3] With respect to the EEOC documents, the Court considers only the Right to Sue, as this document is a "precondition to filing . . . Title VII claims," and generally can be considered by the Court in adjudicating the motion to dismiss, as well as integral to the SAC. *Brown v. Cnty. of Westchester*, No. 22-CV-06146, 2024 WL 21937, at *3 (S.D.N.Y. Jan. 2, 2024). There appear to be disputes as to the admissibility, authenticity, accuracy, and relevance of the other EEOC documents.[4]

---

[3] Plaintiff's request that the Court consider this document as it is "submitted solely for the purpose of preserving the original record," is an improper end-around this Court's May 15, 2025 Order, and thus, the Clerk of Court is respectfully directed to strike document number 66-1 from the docket.

[4] At the motion to dismiss stage and without the benefit of discovery, the Court may not, and does not, make a factual finding as to whether and what extent the EEOC received the fax containing the June 6, 2022 EEOC Charge. Plaintiff pleads in the SAC, which the Court must take as true at this juncture, that he "promptly resubmitted the [June 6, 2022 EEOC Charge] on June 8, 2022, ensuring receipt." (SAC ¶ 12).

As such, the Court declines to consider these documents at this juncture. *See Sternkopf v. White Plains Hosp.*, No. 14-CV-04076, 2015 WL 5692183, at *4 (S.D.N.Y. Sept. 25, 2015). The Court also declines to consider the EEOC Timeline, as it was generated by Plaintiff specifically in response to Defendants' motion, rendering it impossible for Plaintiff to have relied upon it while drafting the complaint. Additionally, review of the contents of this document would require the Court, at this juncture, to conduct impermissible credibility determinations. *See Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 223-24 (S.D.N.Y. 2018); *see also Palin v. New York Times Co.*, 940 F.3d 804, 812 (2d Cir. 2019). Finally, the Court declines to consider the Employee Handbook and "Vacation Time" policy document proffered by Defendants, as Plaintiff does not sufficiently reference or rely upon these documents to consider them "integral" to the SAC. *DiFolco*, 622 F.3d at 111.

## ANALYSIS

Defendants press eight arguments[5] in support of their motion to dismiss: (i) all of Plaintiff's claims (except claim for relief nineteen) are barred by the applicable statute of limitations; (ii)

---

Nevertheless, the Court declines to consider the June 6, 2022 EEOC Charge itself at this time, as it is not "clear that there exists no material disputed issues of fact regarding the relevance" of this document, as Defendants allege that Plaintiff's allegations concerning this charge are "conclusory and contrary to the documentary evidence" (Def. Br. at 7, n.4), "immaterial," and "implausible in any event" (Reply at 4). *See Essilor International SAS v. J.P. Morgan Chase Bank, N.A.*, 650 F. Supp. 3d 62, 74 (S.D.N.Y. 2023). Discovery will need to reveal exactly what the EEOC considered before it issued the Right to Sue to Plaintiff.

[5] Defendants also urge the Court to strike the SAC as improper and prejudicial due to Plaintiff's purported failure to seek leave to amend and as Defendants incurred time and expenses associated with filing their motion to dismiss prior to the SAC being filed. (Def. Br. at 6). However, by Order dated August 29, 2024, the Court granted Plaintiff's request for an extension of time to file the SAC. (Doc. 34). Accordingly, given Plaintiff's *pro se* status, and as the Court has discretion to allow amendment "when justice so requires," the Court construes Plaintiff's request (Doc. 32) as requesting leave to amend, and grants such relief *nunc pro tunc*. *See Derti v. Barg*, No. 19-CV-10215, 2021 WL 4776359, at *5-6 (S.D.N.Y. Oct. 12, 2021) ("Liberal application of Rule 15(a) is warranted with respect to *pro se* litigants, who 'should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim.'"). The Court declines to strike the SAC.

Plaintiff has failed to administratively exhaust his discrimination, hostile work environment, and retaliation claims stemming from Defendants' alleged violations of Title VII, the ADA, and the ADEA;[6] (iii) Plaintiff has failed to allege plausible hostile work environment claims (Claims One, Eight, Eleven, and Seventeen); (iv) Plaintiff has failed to allege plausible retaliation claims (Claims Seven and Twelve); (v) Plaintiff has failed to allege plausible ADA or NYSHRL disability discrimination claims (Claims Five, Six, Thirteen, and Fourteen); (vi) Plaintiff has failed to allege plausible FMLA interference and retaliation claims (Claims Nine and Ten); (vii) Plaintiff has failed to allege plausible NYSHRL national origin and age discrimination claims or NYSHRL aiding and abetting claims (Claims Fourteen, Fifteen, Sixteen, and Eighteen); and (viii) Plaintiff has failed to allege plausible FLSA and NYLL claims (Claim Nineteen). The Court will address each argument *seriatim*.

## I.    Statute of Limitations

Although the statute of limitations is ordinarily asserted as an affirmative defense, the Second Circuit permits such defense to be raised on a Rule 12(b)(6) motion provided "the defense appears on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004); *DiBenedetto v. Coley*, No. 22-CV-05926, 2024 WL 1216703, at *4 (S.D.N.Y. Mar. 21, 2024) (granting a motion to dismiss and dismissing claims as time-barred).

The Court, having carefully reviewed this argument, has determined that none of Plaintiff's claims will be dismissed on statute of limitations grounds at this juncture. Plaintiff has sufficiently pleaded allegations within the respective limitations periods for each of his claims for relief; and to the extent that Plaintiff has pled allegations outside of the statute of limitations, it is well-

---

[6] Defendants do not move to dismiss Plaintiff's Title VII or ADEA claims stemming from alleged age or national origin discrimination on any grounds aside from administrative exhaustion and statute of limitations. Accordingly, these claims survive.

established that the Court may consider those allegations as background and context for actionable allegations. *See Tenemille v. Town of Ramapo*, No. 18-CV-00724, 2020 WL 5731964, at *8 (S.D.N.Y. Sept. 24, 2020); *Imperato v. Otsego Cty. Sheriff's Dep't*, No. 13-CV-01594, 2016 WL 1466545, at *14 (N.D.N.Y. Apr. 14, 2016); *Magadia v. Napolitano*, No. 06-CV-14386, 2009 WL 510739, at *11 (S.D.N.Y. Feb. 26, 2009). Accordingly, Defendants' motion to dismiss all claims for relief (except the nineteenth) on statute of limitations grounds is denied at this juncture.

II.    Administrative Exhaustion of Federal Claims

Defendants seek to dismiss Plaintiff's first eight claims for relief based upon Plaintiff's failure to exhaust his administrative remedies. (Def. Br. at 7-11).

Although exhaustion of administrative remedies "is ordinarily 'an essential element' of a Title VII claim," "[c]laims not raised in an EEOC complaint . . . may be brought in federal court if they are 'reasonably related' to the claim filed with the agency." *Williams v. N.Y.C. Hous. Auth*., 458 F.3d 67, 70 (2d Cir. 2006) (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2001)). As the Second Circuit has recognized, "[a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Fitzgerald v. Henderson*, 251 F.3d 345, 359-60 (2d Cir. 2001). The "central question" is whether the EEOC Charge gave that "agency adequate notice to investigate discrimination on" the bases alleged. *Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008); *Williams*, 458 F.3d at 70; *Deravin v. Kerik*, 335 F.3d 195, 202 (2d Cir. 2003). "Generally, courts dismiss claims that are so qualitatively different from the allegations contained in an EEOC charge that an investigation would not likely encompass the new allegations." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 469 (S.D.N.Y. 2011) (citing *Mathirampuzha*, 548 F.3d at 74-78).

Defendant argues that the only EEOC charge the Court may consider is Plaintiff's August 29, 2022 EEOC Charge; and because this charge "does not contain any allegation that he was discriminated against on account of his national origin or age," Plaintiff failed to exhaust these claims. (Def. Br. at 7-9). However, the SAC and Plaintiff's opposition create a factual issue as to whether and to what extent either or both the June 6, 2022 EEOC Charge and Amended 2023 EEOC Charge can be considered in addition to the August 29, 2022 EEOC Charge. (SAC ¶¶ 12-17; Pl. Br. at 7-9). The Court has already determined not to consider any of these documents at this juncture because they, *inter alia*, have not been presented in admissible form. Plaintiff alleges that he "promptly resubmitted the [June 6, 2022 EEOC Charge] on June 8, 2022, ensuring receipt." (SAC ¶ 12). Plaintiff further alleges that the June 6, 2022 EEOC Charge "contained the main allegations set forth in th[e] [SAC]." (*Id.*). Also Plaintiff alleges that he received the EEOC Right to Sue on September 21, 2023, and commenced this action within 90 days thereof. (*Id.* ¶ 17). Without knowing exactly what the EEOC relied upon in issuing its Right to Sue letter, the Court finds that for now Plaintiff has sufficiently alleged that he has exhausted his administrative remedies for his federal discrimination, harassment/hostile work environment, and retaliation claims.

Accordingly, Defendants' motion to dismiss Plaintiff's first eight claims for relief based on exhaustion grounds is denied.

### III.    Claims for Relief

The Court then must consider the plausibility of Plaintiff's claims for relief under Title VII, the ADA, the ADEA, the NYSHRL, the FMLA, the FLSA, common law state law claims, and the NYLL. (*See* SAC ¶¶ 275-473). Specifically, the Court considers the following claims for relief *seriatim*: hostile work environment, retaliation, disability discrimination, FMLA discrimination

and interference, NYSHRL discrimination based on national origin and age, as well as violations of the NYLL and FLSA. Although Defendants did technically move to dismiss Plaintiff's Title VII or ADEA discrimination claims on the merits, the Defendants made no arguments concerning those claims and therefore, Plaintiff's second, third, and fourth claims survive and are not addressed herein.

A. Hostile Work Environment Claims (Claims One, Eight, Eleven, and Seventeen)

Plaintiff asserts in his first and eighth claims for relief hostile work environment/harassment allegations based on age, national origin, and disability discrimination in violation of Title VII, the ADA, and the ADEA against WestMed. Plaintiff asserts his eleventh and seventeenth claims for hostile work environment based on age, national origin, and disability under the NYSHRL. While prior to an amendment to New York's Human Rights Law, the pleading standards were generally the same for Title VII, ADA, ADEA, and NYSHRL claims, the NYSHRL was amended, effective October 11, 2019. *See Makhsudova v. City of New York*, No. 20-CV-10728, 2022 WL 1571152, at *5 n.7 (S.D.N.Y. May 18, 2022) ("The New York State Legislature passed several amendments to the NYSHRL in June 2019, the effect of which was to render the standard for claims closer to the standard under the NYCHRL."). That amendment impacts the Court's burden of proof analysis of Plaintiff's hostile work environment claim under the NYSHRL. The Court therefore considers these now distinct statutory claims for relief separately.

i. Federal Hostile Work Environment (Claims One and Eight)[7]

To state a hostile work environment claim under Title VII, the ADA, or the ADEA, a plaintiff must allege: "[1] that the harassment was 'sufficiently severe or pervasive to alter the

---

[7] Although Plaintiff identifies certain of his claims as "harassment," the Court construes them as hostile

conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (alterations in original)); *Verne v. New York City Dep't of Educ.*, No. 21-CV-05427, 2022 WL 4626533, at *12 (S.D.N.Y. Sept. 30, 2022) ("Claims under the ADEA and ADA are evaluated in the same manner as claims under Title VII."). The harassing conduct must, of course, be caused by the plaintiff's "membership in a protected class," *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999), and the test "has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Thomson v. Odyssey House*, No. 14-CV-03857, 2015 WL 5561209, at *13 (E.D.N.Y. Sept. 21, 2015) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015)), *aff'd*, 652 F. App'x 44 (2d Cir. 2016). While a single severe incident may suffice, "[a]s a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (internal quotation marks omitted). The focus is on the totality of the circumstances. *Smith v. Westchester Cnty. Dep't of Corr.*, No. 12-CV-03941, 2014 WL 4384104, at *9 (S.D.N.Y. Sept. 3, 2014). A totality-of-the-circumstances evaluation means that courts examine:

> frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance.

---

work environment claims. (*See, e.g.*, SAC ¶¶ 85-86 (referring to WestMed having "cultivated an oppressive and hostile work environment")).

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003) (alterations in original)). Thus, "a plaintiff need only plead facts sufficient to support the conclusion that []he was faced with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of h[is] employment altered for the worse." *Jeanty v. Precision Pipeline Sols., LLC*, No. 18-CV-07721, 2019 WL 3532157, at *4 (S.D.N.Y. Aug. 2, 2019) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks omitted)). Importantly, "[h]ostile work environment claims are meant to protect individuals from abuse and trauma that is severe . . . not . . . to promote or enforce civility, gentility or even decency." *Isbell v. City of New York*, 316 F. Supp. 3d 571, 591 (S.D.N.Y. 2018) (quotation marks and citation omitted). Thus, "excessive criticism and rudeness do not constitute a hostile work environment." *Ramirez v. Temin & Co.*, No. 20-CV-06258, 2021 WL 4392303, at *8 (S.D.N.Y. Sept. 24, 2021).

The parties do not address the issue that Plaintiff perceived the environment to be abusive and severe. The question then is whether—looking at the totality of the circumstances—the allegations suggest plausibly that a reasonable person would reach the same conclusion. Considering the allegations here, the Court finds that a reasonable person would not.

Plaintiff alleges that he was subject to the following "discriminatory comments" and witnessed the following actions:[8] Poniros stating that there were a "lot of immigrants, [at WestMed], [and therefore] need[ed] to clean the place up;" periodically demanding Plaintiff "speak English" instead of Ukrainian; making offhand "ageist remarks" including Poniros

---

[8] The Court finds that the continuing violation doctrine may apply to Plaintiff's hostile work environment/harassment claims under Title VII, the ADEA, and the ADA, as these claims, by "their very nature[,] involve[] repeated conduct." *See Banks v. General Motors, LLC*, 81 F.4th 242, 259-60 (2d Cir. 2023). Thus, the Court applies the continuing violation doctrine when considering the plausibility of these claims.

commenting "there is too much old trash working here"; and observing "preferential treatment for younger staff." (SAC ¶¶ 40-41, 53-54, 67). Plaintiff also allegedly experienced exacerbated medical conditions due to Defendants' failure to provide requested accommodations, was "questioned and admonished" for wearing a "medically prescribed cervical brace at work," and was told by Poniros that "Plaintiff's anxiety was 'causing a problem for the department' and instructed him to 'deal with it.'" (*Id.* ¶¶ 82-88, 95-97, 128, 133-135, 193-194). Plaintiff alleges that these examples, among other allegations, "highlighted a relentless pattern of harassment, culminating in his wrongful termination." (*See, e.g.*, *id.* ¶¶ 59, 63-65, 77, 81, 101, 121, 146-149, 151, 173, 179, 184, 196, 207-208, 214, 225, 227, 236-240, 249-250, 255, 262-269). However, despite Plaintiff's conclusory assertions otherwise, these examples, as well as the remainder of the relevant allegations contained within Plaintiff's Second Amended Complaint, are insufficient; they simply do not rise to the level where a reasonable person could find them "severe" or "pervasive" enough or constitute physical "threats" or "humiliation" sufficient to rise to the level of a hostile work environment. *See Littlejohn*, 795 F.3d at 321 (allegations that the employer made "negative statements" about plaintiff, was "impatient and used harsh tones with" plaintiff, "wrongfully reprimanded" plaintiff, and spoke to plaintiff sarcastically were not enough for a hostile work environment claim); *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) ("[D]efendants wrongly excluded her from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her. These incidents do not support a finding of a hostile work environment . . . ."); *Lovallo v. New York City Dep't of Educ.,* No. 23-CV-00834, 2024 WL 1329793, at *15 (S.D.N.Y. Mar. 27, 2024); *Brown v. New York City Dep't of Educ.*, No. 20-CV-02424, 2021 WL 4943490, at *12 (S.D.N.Y. Aug. 31, 2021) ("[C]ourts in this Circuit have

consistently held that '[a]llegations of even constant reprimands and work criticism by themselves are not sufficient to establish a hostile environment claim'"(quoting *Lucenti v. Potter*, 432 F. Supp. 2d 347, 362 (S.D.N.Y. 2006) (first alteration added)), *adopted by* 2021 WL 4296379 (S.D.N.Y. Sept. 20, 2021).

Accordingly, Defendants' motion to dismiss Plaintiff's first and eighth claims for relief under Title VII, ADA, and ADEA hostile work environment is granted.

ii.  NYSHRL Hostile Work Environment (Claims Eleven and Seventeen)

Defendants argue that Plaintiff's allegations are insufficient to state a claim for hostile work environment under the NYSHRL, as they amount only to "petty slights or trivial inconveniences." (Def. Br. at 31).

The New York state legislature amended the NYSHRL, effective October 11, 2019, and the relevant amended provision states:

> an employer . . . to subject any individual to harassment because of an individual's age . . . national origin . . . [or] disability . . . regardless of whether such harassment would be considered severe or pervasive under precedent applied to harassment claims. Such harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories . . . . It shall be an affirmative defense to liability under this subdivision that the harassing conduct does not rise above the level of what a reasonable victim of discrimination with the same protected characteristic or characteristics would consider petty slights or trivial inconveniences.

N.Y. Exec. Law § 296(1)(h). This amendment "eliminate[s] the requirement that harassing or discriminatory conduct be severe or pervasive for it to be actionable and . . . adopt[s] instead a more protective standard that prohibits conduct that results in inferior terms, conditions, or privileges of employment." *Maiurano v. Cantor Fitzgerald Sec.*, No. 19-CV-10042, 2021 WL 76410, at *3 n.2 (S.D.N.Y. Jan. 8, 2021) (internal quotation marks omitted); *see also McHenry v.*

*Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (explaining that "the NYSHRL was amended to direct courts to construe the NYSHRL, like the NYCHRL, liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws . . . worded comparably . . . have been so construed" (internal quotation marks omitted)). The effect of the amendment is to make the standard for NYSHRL claims closer to the more liberal standard of the New York City Human Rights Law ("NYCHRL"); and under these laws, a Plaintiff must only allege that he "was treated 'less well' because of h[is] employer's discriminatory intent." *See Reach v. Healthfirst, Inc.*, No. 23-CV-08085, 2024 WL 4493769, at *6-7 (S.D.N.Y. 2024) (holding that "less well" requires that a Plaintiff must "merely plausibly allege 'differential treatment that is more than trivial, insubstantial, or petty.'"). Specifically, it has been held that "less well" simply requires a plaintiff to show that "[h]e was 'subjected to inferior terms, conditions, or privileges of employment' due to h[is] membership in a protected class." *Moore v. Hadestown Broadway Limited Liability Company*, 722 F. Supp. 3d 229, 246 (S.D.N.Y. 2024).

Plaintiff has highlighted a number of examples in the SAC where he was purportedly treated "less well" by Defendants (*see, e.g.*, Pl. Br. at 13; *see also* SAC ¶¶ 238-239, 267-269, 307). While Plaintiff's allegations do not suffice to state a claim under the more stringent "severe and pervasive" standard under Title VII, his allegations do indicate, at least at this stage, that Plaintiff was treated "less well," satisfying the post-2019 standard under NYSHRL. *Id.* (holding that where Plaintiff claims she was terminated and replaced by a woman of a different race, this was sufficient to state a claim for hostile work environment under NYSHRL, but not Title VII).

Further, Defendants' conclusory arguments, "parrot[ing]" the applicable standard without in any way "meaningfully applying applicable case law to the facts of this case," is insufficient to satisfy the Court that "Plaintiff has not stated a plausible claim for relief." *See Doe v. King*, No.

20-CV-02331, 2021 WL 4198275, at *4-5 (S.D.N.Y. Sept. 13, 2021). Accordingly, this branch of Defendants' motion to dismiss claims eleven and seventeen is denied.

    B.  Retaliation Claims (Claims Seven and Twelve)

Plaintiff's seventh and twelfth claims for relief allege retaliation, on the general theory that Plaintiff was terminated for complaining about discrimination, specifically based in age, national origin, and disability discrimination. (SAC ¶¶ 337-345, 392-400).

To state a claim for Title VII, ADA, ADEA, or NYSHRL retaliation (pre-October 11, 2019 amendments),[9] Plaintiff must allege: "1) participation in a protected activity; 2) the defendant's knowledge of the protected activity; 3) an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013); *see also Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) ("The standards for evaluating . . . retaliation claims are identical under Title VII and the NYSHRL."); *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002) (applying the same standards to ADA claims); *Kessler v. Westchester Cnty. Dep't of Social Servs.*, 461 F.3d 199, 205-206 (2d Cir. 2006) (same as to ADEA). "A plaintiff engages in protected activity when she (1) opposes employment practices prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an investigation, proceeding or hearing arising under Title VII." *Ramirez v. Michael Cetta Inc.*, No. 19-CV-00986, 2020 WL 5819551, at *19 (S.D.N.Y. Sept. 30, 2020). At the motion to dismiss

---

[9] As this case involves accrued claims purportedly occurring both before and after the effective date of the NYSHRL amendments, two different standards must be utilized. Specifically, for claims allegedly accruing prior to October 11, 2019, the federal, more stringent standard, will be utilized for both the federal and the state law claims. *See Lee v. Riverbay Corp.*, 751 F. Supp. 3d 259, 275 (S.D.N.Y. 2024).

stage, the plaintiff's burden is "de minimis." *Dipinto v. Westchester Cnty.*, No. 18-CV-00793, 2019 WL 4142493, at *8 (S.D.N.Y. Aug. 30, 2019).

Defendants only contest the fourth element for Plaintiff's retaliation claim—arguing that he fails to "demonstrate the requisite causal connection between his termination and his alleged protected activity." (Def. Br. at 18). The Court disagrees. On November 8, 2021, Plaintiff attended a meeting with Fried and Gawronski, where he requested a "critical need" for reasonable accommodations due to his disabilities, *i.e.* anxiety and sleep disorders, which were denied by Fried. (SAC ¶¶ 205-208). Plaintiff also allegedly complained to Fried and Gawronski about "instances of pervasive workplace discrimination," and reiterated a complaint and request for an investigation into the "wrongful termination of Dr. Prem," an individual who Plaintiff had previously complained about being terminated unjustly—allegedly due to age, national origin, and disabilities. (*Id.* ¶¶ 166-67, 209). Finally, at the end of the November 8, 2021 meeting, Plaintiff notified Fried and Gawronski that he had "sought legal advice regarding the retaliatory and discriminatory work environment he was subjected to." (*Id.* ¶ 212). Plaintiff alleges that after the meeting, he complained even further to Gawronski of the "pattern of forced resignations and terminations" of "older employees, individuals of foreign origin, and those with actual or perceived disabilities." (*Id.* ¶ 213). These allegations are: (i) sufficient to constitute "protected activity," *see Wray v. Westchester Med. Cntr. Adv. Phys. Servs., P.C.*, No. 21-CV-00394, 2022 WL 3214924, at *8 (S.D.N.Y. Aug. 9, 2022) (noting that "complaints to management" and requests for accommodations satisfy as a "protected activity"); and (ii) are at this stage sufficient to show a "causal connection," as Plaintiff was terminated only a month after the above-described occurrences, providing a "temporal proximity" to the adverse employment action. *See Natofsky v.*

*City of New York*, 921 F.3d 337, 353 (2d Cir. 2019); *see also Daly v. Westchester Cnty. Bd. of Legislators*, No. 19-CV-04642, 2021 WL 229672, at *9 (S.D.N.Y. Jan. 22, 2021).[10]

Accordingly, the Court denies the motion to dismiss with respect to the seventh and twelfth claims for retaliation in violation of Title VII, the ADA, the ADEA, and the NYSHRL.

C.  Disability Discrimination and Failure to Accommodate Claims (Claims Five, Six, Thirteen, and Fourteen)

Plaintiff's fifth, sixth, thirteenth, and fourteenth claims for relief allege violations of the ADA and NYSHRL, respectively, based upon Plaintiff's disability.

i.  ADA Claims (Claims Five and Six)

Plaintiff's fifth claim for relief alleges disability discrimination and his sixth claim for relief alleges a failure to provide a reasonable accommodation for his disability, each in violation of the ADA. (SAC ¶¶ 126, 139, 144).

1.  Disability Discrimination (Claim Five)

The elements of a [discrimination] claim under the ADA are: "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by his employer; (3) he was otherwise qualified to perform the essential functions of the job with or without accommodation; (4) he suffered an adverse employment action; and (5) the adverse employment action was imposed because of his disability." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015) (quoting *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015); cleaned up). Defendants appear to base their argument solely on the second element, claiming that Plaintiff has failed to sufficiently allege a disability, *i.e.*, a "physical or

---

[10] Given that the Court found Plaintiff plausibly pled a retaliation claim in violation of the standards under Title VII, the ADA, and the ADEA, for the purposes of this motion, Plaintiff has plausibly pled a claim for retaliation under post-October 11, 2019 amendment NYSHRL standards as well. *See Doyle v. American Glory Restaurant Corp.*, No. 23-CV-07624, 2024 WL 1466161, at *7 (S.D.N.Y. Apr. 4, 2024) (holding that Title VII acts as a "floor" for the post-amendment NYSHRL).

mental impairment that substantially limits a major life activity." (Def. Br. at 11-13). The Court disagrees.

"A person has a 'disability' under the ADA . . . if he has: (a) 'a physical or mental impairment that substantially limits one or more [of his] major life activities,' (b) 'a record of such an impairment,' or (c) is 'regarded as having such an impairment.'" *Veldran v. Dejoy*, 839 F. App'x 577, 579 (2d Cir. 2020) (quoting 42 U.S.C. § 12102(1); first alteration added). "Major life activities," in turn, are defined to "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Despite Defendants' assertions that Plaintiff's disability allegations are just an "alleged inability to work under [Poniros]," Plaintiff alleges that he suffers from insomnia/sleep disorders, anxiety, and cervical stenosis. (SAC ¶ 313). Viewing the facts in the light most favorable to Plaintiff and in light of Plaintiff's *pro se* status, Plaintiff has sufficiently alleged, for purposes of a motion to dismiss, his disabilities caused him to suffer from "lack of sleep," restricted "breathing" during bouts of severe anxiety; and caused him to struggle with "performing manual tasks" due to his cervical stenosis and alleged radiating nerve pain. (*Id.* ¶ 317; Pl. Br. at 22-23). Taken together these allegations may constitute substantial limitations on "major life activities." *Kopchik v. Town of E. Fishkill, New York*, No. 18-1182-CV, 2018 WL 6767369, at *4 (2d Cir. Dec. 26, 2018) (citing 29 C.F.R. § 1630.2(j)(1)(i)). At this stage, Plaintiff has plausibly alleged he has a disability under the ADA.

Accordingly, the motion to dismiss Plaintiff's fifth claim for relief for disability discrimination under the ADA is denied.

2.  Failure to Accommodate Plaintiff's Disability (Claim Six)

To sufficiently plead a claim for failure to accommodate under the ADA, the Plaintiff must demonstrate that: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Kurlender v. Ironside Group, Inc.*, No. 18-CV-03839, 2019 WL 1318363, at *5-6 (E.D.N.Y. Jan. 4, 2019); *Natofsky*, 921 F.3d at 352. The ADA also requires that an employee and employer engage in an "interactive process" by which "employers and employees work together to assess whether an employee's disability can be reasonably accommodated," and failure to engage may indicate a showing of "bad faith" on the non-participating party. *Felix v. New York City Transit Auth.*, 154 F. Supp. 2d 640, 658 (S.D.N.Y. 2001). Defendants argue that Plaintiff fails to state a claim because the "accommodations" Plaintiff sought were "preferences" with no "rational connection to a disability." (Def. Br. at 13-15; Reply at 11).

Plaintiff pleads multiple instances where he affirmatively requested "accommodations" for his disabilities from any of Fried, Gawronski, or Poniros. At this stage, the Court need not parse each and every request, as the following allegations suffice to state a claim for relief: Plaintiff claims that on November 3, 2021, a day after a "severe car accident," Plaintiff informed Poniros of the accident which he alleges was caused by his "severe anxiety" and thus requested "adjusted work hours, more balanced off-site coverage, and time off to manage his anxiety and sleep issues which were severely impacting his well-being." Poniros allegedly responded that "Plaintiff's anxiety was 'causing a problem for the department' and instructed him to 'deal with it.'" (SAC ¶¶ 193-195; *see also, e.g., id.* ¶¶ 207-208, 234). This purported response creates a question as to whether Poniros engaged in the "interactive process" in good faith, and thus dismissal at this stage

23

is improper. *See Goonan v. Federal Reserve Bank of New York*, 916 F. Supp. 2d 470, 484 (S.D.N.Y. 2013). Further, while requests for accommodations must be analyzed on a case-by-case basis, "part-time or modified work schedules" have been held to be "reasonable accommodations" under the ADA regulations, *Lewis v. Livingston Cnty. Cntr. for Nursing and Rehabilitation*, 30 F. Supp. 3d 196, 210 (W.D.N.Y. 2014), and such request has a rational connection to Plaintiff's alleged anxiety and sleep disorder disabilities.

Accordingly, the motion to dismiss the sixth claim for relief for failure to provide reasonable accommodations in violation of the ADA is likewise denied.

### ii.   Disability Discrimination under NYSHRL (Claims Thirteen and Fourteen)

Plaintiff's thirteenth and fourteenth claims for relief allege discrimination and failure to accommodate on the basis of disability in violation of the NYSHRL against all Defendants. "Discrimination claims under the NYSHRL are governed by the same legal standards as federal ADA claims." *Jones v. New York City Transit Auth.*, 838 F. App'x 642, 644 (2d Cir. 2021) (citing *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 117 n.1 (2d Cir. 2004)). The 2019 Amendment to the NYSHRL does not ultimately impact the Court's finding here. Given that the Court found Plaintiff plausibly pled a disability discrimination claim in violation of the ADA, for the purposes of this motion, Plaintiff has plausibly pled a claim for disability discrimination under NYSHRL. *See Doyle*, 2024 WL 1466161, at *7.

Therefore, Defendants' motion to dismiss Plaintiff's thirteenth and fourteenth claims for relief for disability discrimination is denied.

### D.   FMLA Claims (Claims Nine and Ten)

Plaintiff alleges interference and retaliation claims under the FMLA. Generally, the FMLA is meant "to balance the demands of the workplace with the needs of families, to promote the

stability and economic security of families, and to promote national interests in preserving family integrity" and "to entitle employees to take reasonable leave for medical reasons . . . ." 29 U.S.C. § 2601(b)(1)-(2). To this end, "the FMLA makes it illegal for employers to: (1) 'interfere with, restrain, or deny the exercise of or the attempt to exercise, any right' provided under the FMLA; or (2) 'discharge or in any other manner discriminate against any individual for opposing any practice made unlawful' by the FMLA." *Prout v. Vladeck*, 316 F. Supp. 3d 784, 800 (S.D.N.Y. 2018) (quoting 29 U.S.C. § 2615(a)). As a threshold matter, a plaintiff pleading FMLA claims against defendants in their individual capacity must sufficiently demonstrate individual liability against them.

i.  <u>Individual Liability under the FMLA</u>

Defendants argue that Plaintiff has failed to sufficiently show that the Individual Defendants had "substantial authority" over his FMLA claims to adequately plead a claim against them. (Def. Br. at 22-24; Reply at 12-13). To assess individual liability under the FMLA, the Second Circuit directs the application of the "economic reality test," *i.e.*, "whether, as a matter of economic reality, an entity is an employer for purposes of the [FMLA]," thus, requiring the Court to determine "whether each named individual defendant controlled in whole or in part Plaintiff's rights under the FMLA." *Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 475 (S.D.N.Y. 2011) (citing *Holt v. Welch Allyn, Inc.,* No. 95-CV-01135, 1997 WL 210420, at *2 (N.D.N.Y. Apr. 15, 1997) (internal quotation marks omitted)). However, to survive a motion to dismiss, "Plaintiff need not allege sufficient facts to satisfy the economic reality test; instead, he must simply 'plead that the proposed Individual Defendants had substantial control over the aspects of employment alleged to have been violated.'" *Id.* at 475-76 (quoting *Augustine v. AXA Fin., Inc.*, No. 07-CV-08362, 2008 WL 5025017, at *4 (S.D.N.Y. Nov. 24, 2008)). Notably, "[i]ndividual liability is not limited

to those who grant or deny a leave but may extend to those who participate in retaliation for the exercise of FMLA benefits," and an individual may be liable if they "exercise[] supervisory authority over the complaining employee and w[ere] responsible in whole or in part for the alleged violation while acting in the employer's interest." *Mitura v. Finco Servs., Inc.*, 712 F. Supp. 3d 442, 457 (S.D.N.Y. 2024) (internal quotation marks omitted).

Here, Plaintiff has met the minimal burden to plausibly allege individual liability on the part of Poniros, Gawronski, and Fried, as they each allegedly "exercise[d] supervisory authority over [Plaintiff] and were responsible in whole or in part for the alleged violation while acting in the employer's interest." *Mitura*, 712 F. Supp. 3d at 457. Specifically, each of Poniros, Gawronski, and Fried had supervisory authority over Plaintiff to varying degrees and were involved in the FMLA process. As to Gawronski, Plaintiff alleges that he was his direct supervisor, and upon notification of Plaintiff's intent to request FMLA due to anxiety and his sleep disorder, Gawronski "sought to dissuade" Plaintiff from pursuing FMLA leave. (SAC ¶¶ 37, 243, 244, 251). As to Fried, Plaintiff alleges that Fried was involved in forwarding him the necessary forms to fill out for the FMLA process, checked in with Plaintiff during multiple meetings as to Plaintiff's desire to submit for FMLA leave, and was at Plaintiff's termination meeting. (*Id.* ¶¶ 132, 254, 262). Finally, as to Poniros, Plaintiff alleges that she was his supervisor as the manager of the "vascular lab" and had previously rejected and reacted hostilely to Plaintiff's previous FMLA request concerning his need to care for his relative. (*Id.* ¶¶ 35, 152, 156, 175). These allegations are sufficient to allow for individual liability under the FMLA against the Individual Defendants. *See, e.g.*, *Crawford v. Bronx Community College*, No. 22-CV-01062, 2024 WL 3898361, at *9 (S.D.N.Y. Aug. 21, 2024).

ii.  <u>FMLA Interference and Retaliation Claims</u>

An FMLA interference claim requires that Plaintiff plead: "(1) that he is an eligible employee under the FMLA; (2) that defendant is an employer as defined in the FMLA; (3) that he was entitled to leave under FMLA; (4) that he gave notice to the defendant of his intention to take leave; and (5) that he was denied benefits to which he was entitled under the FMLA." *Smith*, 769 F. Supp. 2d at 465 (citing *Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 427 (S.D.N.Y. 2004)); *see also Ziccarelli v. NYU Hosps. Cntr.*, 247 F. Supp. 3d 438, 447 (S.D.N.Y. 2017). Similarly, an FMLA retaliation claim requires Plaintiff to "demonstrate [that]: (1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Kastrati v. Progress of Peoples Mgmt. Corp.*, No. 18-CV-06731, 2020 WL 6940991, at *5 (E.D.N.Y. Nov. 24, 2020) (citing *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004)).

First, Defendants argue that Plaintiff failed to allege facts sufficient to show that any of his alleged disabilities constituted "serious health conditions." (Def. Br. at 24-25). However, on this record and at this stage, Plaintiff has sufficiently alleged that at least some of his "disabilities" qualify as "serious health conditions" under the FMLA. Namely, his severe anxiety and sleep disorders, both of which allegedly "require[] monthly follow-ups with his prescribing physician to maintain access to essential, controlled medication," and resulted in Plaintiff being "unable to get out of bed for . . . four days" are enough. (SAC ¶ 207; Pl. Br. at 28). The Court finds that at this stage, these allegations are sufficient to survive Defendants' motion to dismiss. *See Tully-Boone v. North Shore-Long Island Jewish Hosp. Sys.*, 588 F. Supp. 2d 419, 422-24 (E.D.N.Y. 2008) (holding that Plaintiff's anxiety and depression, where her prescribed medication left her "lethargic

and drowsy," and resulted in difficulty sleeping and inability to arrive at work on time, sufficiently qualified as "serious health conditions" at the pleadings stage).

Second, Defendants take issue with the level of "notice" Plaintiff provided to his "employer," arguing that he failed to provide "anyone with sufficient information to assess his FMLA eligibility." (Def. Br. at 25-26). However, taking the pleadings as true, Plaintiff made it clear to both Gawronski and Fried that he would be applying for FMLA leave, requested and received the alleged FMLA paperwork from Fried, and notified Fried on December 3, 2021 that he would be submitting it in "two weeks" once his "physician return[ed] from a vacation in Aruba." (SAC ¶¶ 233, 243, 254). Plaintiff was terminated before this two-week period had passed, only five days after he notified Fried, on December 3, 2021, of this plan. (*Id.* ¶¶ 254, 262). These allegations constitute sufficient notice here.

Finally, Defendants insist that Plaintiff has failed to plead any inference of "retaliatory intent" associated with his termination. (Def. Br. at 26). This argument similarly falls flat, as "temporal proximity" is sufficient to satisfy the "motivating factor" inquiry. As Defendants were on notice that Plaintiff would be exercising his FMLA rights only five days prior to his termination, Plaintiff sufficiently satisfies this factor at this juncture. *See Crawford v. Bronx Community College*, No. 22-CV-01062, 2023 WL 11862082, at *15 (S.D.N.Y. Jul. 19, 2023), *adopted by* 2024 WL 3898361 (S.D.N.Y. Aug. 21, 2024).

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's ninth and tenth claims for relief alleging violations of the FMLA.

### E. Age and National Origin Discrimination Claims Under NYSHRL (Claims Fourteen, Fifteen, and Sixteen)

Plaintiff brings claims against all Defendants under the NYSHRL, alleging that he was discriminated against due to his age and national origin. (*See* SAC ¶¶ 247-258, 310-312).

Allegations regarding discrimination occurred in this scenario both before and after October 11, 2019. However, for this claim, Defendants focus primarily on Plaintiff's December 8, 2021 termination. Specifically, Defendants argue that Plaintiff has not pled facts suggesting an inference of discrimination to rebut Defendants' alleged "legitimate, non-discriminatory and non-retaliatory reason for terminating his employment – time theft." (Def. Br. at 32). Accordingly, the Court applies the post-October 11, 2019 amendment NYSHRL standards to this claim.

Plaintiff must allege, in order to state a claim pursuant to the NYSHRL, only that he was "treated 'less well' because of a discriminatory intent, *i.e.*, that the unequal treatment was based, at least in part, on a protected characteristic." *Lee*, 751 F. Supp. 3d at 275. Notably, "the challenged conduct need not even be 'tangible' (like hiring or firing)" and any discriminatory motive need not be the "sole motivating factor," rather, simply "one of the motivating factors." *Id.*

Here, Plaintiff was terminated from his position as Vascular Technologist and allegedly replaced by a "mid-20's, U.S.-born individual." (SAC ¶ 269). That is enough, at this stage and on these facts, to meet the "less well" standard required to state a *prima facie* claim of discrimination based on age and national origin.[11] S*ee Moore*, 722 F. Supp. 3d at 251-52. Equally these allegations are sufficient to suggest a pretext for Defendants' alleged legitimate non-discriminatory reason for termination.

---

[11] In any event, even if the Court were to apply the more stringent pre-October 11, 2019 NYSHRL standards (*i.e.*, Title VII standards), such allegations would nevertheless be sufficient to plausibly plead a claim for relief. S*ee, e.g.*, *Styles v. Westchester Cnty.*, No. 18-CV-12021, 2020 WL 1166404, at *8 (S.D.N.Y. Mar. 10, 2020) ("[T]he mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the *prima facie* stage of the Title VII analysis." (quoting *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) alteration in original)); *Isbell*, 316 F. Supp. 3d at 591 (S.D.N.Y. 2018) (denying motion to dismiss NYSHRL and § 1981 race discrimination claims because alleging that the black plaintiffs were "largely replaced by non-African American individuals" pled sufficiently an inference of discrimination (internal quotation mark omitted)).

Accordingly, the motion to dismiss the NYSHRL discrimination claims fourteen, fifteen, and sixteen is denied.

F.   NYSHRL Aiding and Abetting Claims (Claim Eighteen)

Plaintiff also brings claims under the NYSHRL for aiding and abetting (eighteenth claim) against the Individual Defendants. (SAC ¶¶ 450-456). Defendants argue that these NYSHRL claims should be dismissed as "there is no underlying viable discrimination claim." (Def. Br. at 32). As the Court has already held *supra* that Plaintiff has sufficiently pled, at this stage, a viable discrimination claim, the Court declines to dismiss the aider and abettor claims against Poniros, Gawronski, and Fried.

G.   FLSA and NYLL Claims (Claim Nineteen)

Plaintiff presses federal and state claims for Defendants' failure to pay the following: timely wages on a weekly basis as Plaintiff qualifies as an alleged "manual worker" (NYLL § 191); unpaid mileage reimbursement (FLSA and NYLL § 193);[12] and accrued paid time off ("PTO") (FLSA and NYLL § 193). (SAC ¶¶ 461-473). Defendants argue that Plaintiff's NYLL § 191 claim fails because Plaintiff, a Vascular Technologist with an "accredited ultrasound program"

---

[12] Plaintiff alleges that in addition to violating the FLSA and NYLL, Defendants' refusal to reimburse mileage expenses also "represents a breach of agreed-upon employment terms." (SAC ¶ 465). Defendants' conclusory arguments that Plaintiff "has not alleged the necessary elements for such a claim," and "does not plead the elements for breach of contract," are not persuasive, and thus, at this juncture, the Court cannot determine that Defendants "established as a matter of law that Plaintiff has not stated a plausible claim for relief." *King*, 2021 WL 4198275, at *4. The same premise applies for Plaintiff's purported promissory estoppel and unjust enrichment claims. (*See* Pl. Br. at 31-32). Though Defendants argue, albeit briefly, that such claims are "impermissibly duplicative," and that Plaintiff fails to "plead the necessary elements," the Court declines to dismiss any of these common law claims at this stage. *See Shetel Industries LLC v. Adin Dental Implant Sys., Inc.*, 493 F. Supp. 3d 64, 113-14 (E.D.N.Y. 2020) (where a "bona fide dispute exists as to the existence of the contract, the plaintiff may proceed on both breach of contract and quasi-contract theories").

certificate, does not qualify as a "manual worker" under the NYLL and therefore is barred from pressing this claim (Def. Br. at 33-35).[13]

Defendants also argue that Plaintiff's FLSA and NYLL § 193 claims fail because Plaintiff's wages were well above minimum wage (barring Plaintiff's mileage reimbursement claims); Defendants' employment policies provide that employees are not entitled to PTO upon termination (barring Plaintiff's NYLL unpaid PTO claims); and as to the FLSA, the statute "does not require payment for time not worked, such as PTO" (barring Plaintiff's FLSA unpaid PTO claims). (*Id*. at 26-27, 33, 35; Reply at 14, 15).

i.  NYLL § 191: Untimely Payment of Wages

NYLL § 190(4) defines a manual worker as "a mechanic, workingman or laborer." The Department of Labor interprets this provision to include "employees who spend more than 25 percent of their working time performing physical labor." N.Y. Dep't of Labor Opinion Letter, No. RO-09-0066 (May 21, 2009). Plaintiff pleads that his responsibilities include "engag[ing] in substantial physical labor involving the operation of ultrasound machines, manipulation of equipment, assisting patients, and routine maintenance tasks like stocking supplies and cleaning rooms and equipment," and that "this level of physical exertion" classifies Plaintiff as a "manual worker" under the NYLL. (SAC ¶ 461).[14] Such allegations are generally sufficient to survive a Rule 12(b)(6) motion to dismiss. *See Macchiavello v. ABB/CON-CISE Optical Group LLC*, No.

---

[13] Defendants also argue that Plaintiff's § 191 claim fails because "the Second Department has held employees have no right of action under that statute," citing to *Grant v. Glob. Aircraft Dispatch, Inc.*, 223 A.D.3d 712 (2d Dep't 2024). This Court has already rejected this exact argument in another case and sees no reason to reach a different conclusion here. *See Phoenix v. Cushman & Wakefield U.S., Inc.*, No. 24-CV-00965, 2025 WL 357793, at *5 (S.D.N.Y. Jan. 31, 2025). The Court thus adopts its previous holding that "manual workers, as defined by the NYLL, have both an expressed and implied right of action to enforce violations of Section 191(1)(a)." *Id.*

[14] Plaintiff also alleges in his opposition that his role "required significant physical exertion far exceeding NYDOL's 25% manual labor threshold," namely "60-80%." (Pl. Br. at 34).

22-CV-08468, 2023 WL 4625009, at *4 n.5 (S.D.N.Y. Jul. 19, 2023); *see also Rankine v. Levi Strauss & Co.*, 674 F. Supp. 3d 57, 67-68 (S.D.N.Y. 2023). Accordingly, the Court finds that Plaintiff has stated a claim under NYLL § 191 for untimely payment of wages.

ii. FLSA § 201 *et seq.* and NYLL § 193: Unpaid PTO and Mileage Reimbursement

Plaintiff's claim for unpaid PTO under the FLSA is dismissed, as any payment for time "not worked," including "payments made for occasional periods when no work is performed due to vacation, holiday, illness," is not required by § 207(e). *Scott v. City of New York*, 592 F. Supp. 2d 386, 400 (S.D.N.Y. 2008) (citing 29 U.S.C. § 207(e)). Specifically, under the FLSA, "[e]mployees do not have a statutory entitlement to accrued vacation pay." *See Isaacs v. Central Parking Sys. of New York, Inc.*, No. 10-CV-05636, 2012 WL 957494, at *6 (E.D.N.Y. Feb. 27, 2012).

With respect to the NYLL however, it is well settled that "employees are 'entitle[d] to receive payment for accrued, unused paid time off upon termination of employment,' where such an entitlement is established 'by the terms of the employer's publicized policy,'" which may include "personnel handbooks and manuals." *Isayeva v. Diamond Braces*, No. 22-CV-04575, 2024 WL 1053349, at *19 (S.D.N.Y. Mar. 11, 2024). Because the Court declines to consider the documents proffered by Defendants on this motion for the reasons explained *supra*, and because the Court declines at this stage to categorize Plaintiff as anything different than a "manual laborer" as he has pled, this prong of Plaintiff's NYLL § 193 claim survives. Plaintiff's FLSA claim on this theory is dismissed.

Plaintiff's claims under FLSA § 201 *et seq.* and NYLL § 193 based on mileage reimbursement are also dismissed. "Under New York law, employers do not have to reimburse employees for business expenses . . . so long as not doing so does not reduce the employee's wage

below the minimum wage." *Hong v. JP White Plains, Inc.*, No. 19-CV-05018, 2021 WL 1226566, at *7 (S.D.N.Y. Mar. 31, 2021) ("In other words, NYLL prohibits direct deductions – it does not apply to claims of failure to reimburse," and holding that both "FLSA and NYLL . . . do not require credit or reimbursement unless failure to credit or reimburse would bring an employee's effective rate below the statutory minimum wage."). Plaintiff fails to allege that the monetary amounts he was not reimbursed for mileage and fuel "reduce[d] [his] wage below the minimum wage." (*Id.*). Plaintiff's claims for mileage reimbursement under NYLL and FLSA are therefore dismissed.

Accordingly, Defendants' motion as to Plaintiff's nineteenth claim for relief brought under NYLL § 191 and NYLL § 193 to the extent based in unpaid PTO is denied. The motion is granted as to Plaintiff's claims for relief based on unpaid mileage reimbursement brought under the FLSA and NYLL § 193, as well as Plaintiff's claims for relief based on unpaid PTO brought under the FLSA. Further, to the extent Plaintiff pursues relief pursuant to NYLL § 195(5), this claim is also dismissed, as no private right of action exists for such a violation. *See Kone v. Joy Construction Corp.*, No. 15-CV-01328, 2016 WL 866349, at *5 (S.D.N.Y. Mar. 3, 2016).

## IV.    Leave to Amend

Plaintiff, through his opposition, requests that the Court grant him leave to amend his pleading. (Pl. Br. at 35). "'Plaintiff's request to amend, contained solely in [his] opposition memorandum, is procedurally defective since a bare request to amend a pleading contained in a brief, which does not also attach the proposed amended pleading is improper under Fed. R. Civ. P. 15.'" *Zottola v. Eisai Inc.*, 564 F. Supp. 3d 302, 319 (S.D.N.Y. 2021) (quoting *Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 904 n.4 (E.D.N.Y. 2018)). The nature of Plaintiff's request is especially improper where, as here, Plaintiff has already had opportunities to amend his pleading, and it is unnecessarily voluminous. (*See* Doc. 1; Doc. 3; Doc. 36; *see also* Individual Practice Rule

4(C) (providing opportunity for plaintiffs to seek leave to amend after letter-exchange)). Accordingly, "a busy district court need not allow itself to be imposed upon by the presentation of [Plaintiff's] theories" for a fourth time. *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 258 (2d Cir. 2018).

"The Second Circuit has indicated that 'when a plaintiff does not advise the district court how the complaint's defects would be cured . . . it is not an abuse of discretion to implicitly deny leave to amend.'" *Zottola*, 564 F. Supp. 3d at 319 (quoting *Altayyar v. Etsy, Inc.*, 731 F. App'x 35, 38 n.4 (2d Cir. 2018)). "In particular, where, as here, Plaintiff 'requested leave to amend in a cursory manner without any explanation for how [he] would be able to cure the [Second Amended Complaint's] defects,' the Court may simply deny leave to amend by dismissing the offending" claims. *Id.* (quoting *Altayyar*, 731 F. App'x at 38 n.4). As Plaintiff has offered no explanation for how he would be able to cure the defects in his now-dismissed claims, the Court denies Plaintiff's request, made in the alternative in his opposition brief, for leave to further amend.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

The motion to dismiss is GRANTED with respect to: (1) the first and eighth claims for relief; and (2) the nineteenth claim for relief concerning the failure to pay for unpaid mileage reimbursement under the FLSA and NYLL § 193; the failure to pay for unpaid PTO under the FLSA; and for NYLL § 195(5) violations. The unpaid PTO theory under NYLL § 193 and the failure to pay timely wages theory under NYLL § 191 in the nineteenth claim for relief remain intact.

The motion to dismiss is DENIED with respect to the remaining claims.

Defendants are directed to file an Answer to the Second Amended Complaint within 14 days of the issuance of this Opinion & Order. The Clerk of Court is respectfully directed to terminate the motion sequence at Doc. 45 and strike Doc. 66-1 from the record.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED:**

Dated:    White Plains, New York
              August 13, 2025

_____
PHILIP M. HALPERN
United States District Judge